United States District Court
Southern District of Texas
**ENTERED**
August 29, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MAHMOOD GAZANI, | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:22-CV-02470 |
| | § | |
| CITY OF HOUSTON, | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant City of Houston's Motion for Summary Judgment (Dkt. 35). After careful consideration of the briefing, the record, and the applicable law, the Court **GRANTS** the Motion (Dkt. 35) and **DISMISSES** this case.

## I.    FACTUAL BACKGROUND

This lawsuit arises out of Plaintiff Mahmood Gazani's ("Gazani") employment relationship with the Houston Police Department ("HPD"). (Dkt. 35 at p. 7). A few years into serving as a Police Officer with HPD, Gazani took on additional duties as a Field Training Officer. (*Id*. at p. 12). In doing so, Gazani signed up to supervise "probationary police officers during their six-month probationary period after their graduation from the Police Academy." *Id*.

While performing these duties, Gazani expressed to his direct supervisor, Sergeant Andres Miller ("Sgt. Miller"), that he believed an expectation for Probationary Police Officers to write traffic tickets at some point during the evaluation period was a violation of the Texas state law prohibiting ticket quotas. (*Id*. at p. 13). Sgt. Miller thereafter

conducted a meeting with Gazani, Lieutenant Brian J. Sulla ("Lt. Sulla"), the divisional training supervisor, and the weekend night shift commander to address Gazani's concerns. (*Id*. at p. 14).

In this meeting, "Gazani brought up his national origin, and his experiences living in Iran." *Id*. Specifically, Gazani "raised the corruption of the Iranian police, and told a personal account of how Iranian police officers harassed him and falsely detained him." *Id*. Lt. Sulla was "sympathetic" and "emphasized United State police officers are professionals who would not detain citizens without probable cause." *Id*. Gazani proffers that Lt. Sulla's exact words were: "This is not your country. We run things differently here." (Dkt. 44 at p. 9).

At the conclusion of the meeting, Gazani indicated he wished to write a letter to HPD Legal Services "requesting a legal opinion on whether [Probationary Police Officers] have discretion to write tickets." (Dkt. 35 at p. 14). Gazani also expressed his desire to resign as a Field Training Officer, and he did so shortly after. *Id*.

In a subsequent meeting, Gazani once more sought to request a legal opinion from HPD legal services—but a superior directed Gazani to instead write a letter to the Police Academy/Training Division regarding his concerns. (*Id*. at p. 15). Gazani nonetheless prepared a request for legal advice and sent it through his chain of command to the Chief of Police, as per HPD policy. *Id*. Lt. Sulla then directed Sgt. Miller to "ask Gazani to modify the letter to address a training question, rather than a legal issue." *Id*.

Gazani refused to do, instead filing a complaint through HPD's Employee Representative Council. *Id*. He filed this complaint "to request Legal Opinion/Clarification." *Id*. During this process, Gazani "did not raise any issue of national origin or race discrimination." *Id*. He was "solely focused on the alleged ticket quota." *Id*. Command replied to Gazani's complaint, explaining that "questions regarding field training should be submitted to the Field Training Office." *Id*. Once again, Gazani rejected this response. (*Id*. at p. 16).

Around the same time as he was working this issue through the system, Gazani received a complaint from a civilian. (*Id*. at p. 17). An employee of Memorial Hermann hospital reported Gazani for refusing to complete a HIPAA form when attempting to visit a gunshot victim in the hospital. *Id*. This complaint was investigated internally approximately two months later and resulted in Gazani receiving a three-day temporary suspension "for sustained violations of HPD policies." (*Id*. at p. 18). The day after this suspension was imposed, Gazani filed the EEOC charge of discrimination that gave rise to this lawsuit. *Id*. Gazani later appealed this suspension to an Independent Hearing Examiner, and the punishment was reduced to a written reprimand. *Id*.

Gazani had also filed a complaint of discrimination with HPD's internal affairs division while he was being investigated in connection to the civilian complaint. *Id.* Gazani complained that his entire chain of command was discriminating against him on the basis of his color and nationality. *Id.* As a result, HPD transferred Gazani to a different Patrol Region—to remove him from the alleged discriminatory actors, as per HPD's policy. (*Id*.

at p. 19). The Internal Affairs Division investigated Gazani's complaints and concluded that they were unfounded. *Id*. The EEOC also dismissed Gazani's charge. *Id*.

Gazani thereafter filed this lawsuit, alleging claims against the City of Houston (the "City") for racial discrimination and retaliation under 42 U.S.C. § 1981, as well as national origin discrimination and retaliation under Title VII of the Civil Rights Acts of 1964. (Dkt. 15 at pp. 19 – 27).[1] Houston now moves for summary judgment, arguing that Gazani's claims under both statutes fail as a matter of law. *See* (Dkt. 35). Gazani responds by arguing, among other things, that he has had insufficient opportunity to conduct discovery and that summary judgment is inappropriate. *See* (Dkt. 44).

## II.    LEGAL STANDARD AND APPLICABLE LAW

## A.    Federal Rule of Civil Procedure 56

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is "genuine" if the evidence, taken as a whole, could lead a traditional trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an absence of a genuine issue of material fact. *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The movant, however, need not negate the elements of the non-

---

[1] The Court notes that, although it granted Gazani leave to amend his complaint, he never did so. *See* (Dkt. 17). Consequently, the live pleadings in this matter may be found in Gazani's First Amended Complaint. (Dkt. 15).

movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The

movant may meet its burden by pointing out the absence of evidence supporting the non-

movant's case. *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995).

In deciding whether a genuine and material fact issue has been created, the facts and

inferences to be drawn from those facts must be reviewed in the light most favorable to the

non-movant. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412

(5th Cir. 2003). "[C]onclusory allegations" or "unsubstantiated assertions" do not meet the

non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530

F.3d 395, 399 (5th Cir. 2008). Instead, the non-movant must present specific facts which

show the existence of a genuine issue concerning every essential component of its case.

*Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003).

Further, Rule 56 does not impose upon the Court a duty to sift through the record in search

of evidence to support a party's opposition to summary judgment; evidence not referred to

in the response to the motion for summary judgment is not properly before the Court, even

if it exists in the summary judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th

Cir. 2003).

**B.    42 U.S.C. § 1981**

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States

shall have the same right in every State and Territory to make and enforce contracts."

*Abdallah v. Mesa Air Grp., Inc.*, 79 F.4th 420, 428 (5th Cir. 2023) (quoting

42 U.S.C. § 1981). Section 1981 does not supply "a general cause of action for race

discrimination." *Perry v. VHS San Antonio, L.L.C.*, 990 F.3d 918, 931 (5th Cir. 2021) (quoting *Arguello v. Conoco, Inc.*, 330 F.3d 355, 358 (5th Cir. 2003)); *see* 42 U.S.C. § 1981. Instead, "[i]t bars race discrimination *in contracting*." *Id*. (emphasis in the original).

## C.   Title VII of the Civil Rights Act of 1964

Title VII of the Civil Rights Act of 1964 ("Title VII") prohibits "discharg[ing] any individual, or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). A plaintiff can prove intentional discrimination under Title VII through either direct or circumstantial evidence. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007). When race discrimination claims are based on circumstantial evidence, courts apply the *McDonnell Douglas* burden-shifting framework. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

## III.   ANALYSIS

The Court finds that Gazani failed to appropriately support its motion under Rule 56(d) of the Federal Rules of Civil Procedure and denies its request to defer summary judgment to continue discovery in this matter. On the record before the Court, Gazani's claims fail under 42 U.S.C. § 1981 and Title VII. Accordingly, the Court must grant summary judgment in favor of the City.

**A.      Gazani's Rule 56(d) Motion**

To the extent that Gazani moves for relief under Rule 56(d), the Court denies such request. Gazani argues throughout his response that discovery is incomplete and, therefore, summary judgment is premature. (Dkt. 44 at pp. 11 – 12). Summary judgment is appropriate only where "the plaintiff has had a full opportunity to conduct discovery." *McCoy v. Energy XXI GOM, L.L.C.*, 695 F. App'x 750, 758-59 (5th Cir. 2017) (per curiam) (emphasis omitted) (quoting *Brown v. Miss. Valley State Univ.*, 311 F.3d 328, 333 (5th Cir. 2002)). And Rule 56(d) permits "further discovery to safeguard non-moving parties from summary judgment motions that they cannot adequately oppose." *Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir. 2013) (quotation omitted); *see* FED. R. CIV. P. 56(d).

"To win relief, the Rule 56(d) movant must make two showings." *Bailey v. KS Mgmt. Servs., L.L.C.*, 35 F.4th 397, 401 (5th Cir. 2022). He "first must show (A) that 'additional discovery will create a genuine issue of material fact.'" *Id.* (quoting *Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 816 (5th Cir. 2017)). "More specifically, the non-moving party must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 423 (5th Cir.)*.* Gazani has failed to make this showing.

Gazani argues: "Plaintiff lacks critical HPD internal communications, personnel files, and policy documents that could further substantiate his claims." (Dkt. 44 at p. 12).

He further asserts that these materials potentially reveal "disparate enforcement of disciplinary rules." *Id*. In his unsworn declaration, counsel for Gazani writes: "To my knowledge, discovery in this case has been limited and remains incomplete, leaving certain necessary facts unobtained." (Dkt. 45-1 at p. 1). However, "[t]he nonmovant may not simply rely on vague assertions that discovery will produce needed, but unspecified, facts." *Bailey*, 35 F.4th at 401 (quoting *Smith*, 827 F.3d at 422). Gazani and his counsel's argument do not assert with sufficient specificity what facts, if any, he anticipates finding to create a genuine issue of material fact as to any of Gazani's claims. The Court therefore denies Gazani's request under Rule 56(d).

## B.    Claims under 42 U.S.C. § 1981

The Court finds that Gazani's claims fail under either section 1981 or section 1983. Section 1981 does not provide a remedial cause of action against governmental entities. *Oden v. Oktibbeha Cty.*, 246 F.3d 458, 463 (5th Cir. 2001). "Thus, plaintiffs must assert causes of action against local government actors under § 1983 in order to obtain a monetary remedy for violations of civil rights protected by § 1981. In other words, plaintiffs cannot assert an independent cause of action under § 1981 against state actors; the § 1981 right must instead be asserted by means of the § 1983 procedural remedy." *Escamilla v. Elliott*, 816 F. App'x 919, 922 (5th Cir. 2020).

The Court finds that Gazani's section 1981 claim is barred as a matter of law under this precedent. However, the Court notes that "a handful of unpublished Fifth Circuit opinions have questioned whether it is any longer permissible to dismiss Section 1981

claims where a Section 1983 claim would instead be viable." *Dixon v. Plano Indep. Sch. Dist.*, No. 4:22-CV-148-SDJ, 2023 U.S. Dist. LEXIS 148397, at *16 (E.D. Tex. Aug. 23, 2023); *see Escamilla v. Elliott*, 816 F.App'x 919, 923-24 (5th Cir. 2020) (per curiam) ("[The Fifth Circuit has] expressed 'its doubts about the district court's denial of [the plaintiff's] section 1981 claim on the ground that she did not cite section 1983 as the procedural vehicle for asserting such a claim.'") (quoting *Graham v. Bluebonnet Trails Co.*, 587 F.App'x 205, 206 (5th Cir. 2014)).

Still, even if the Court were to treat Gazani's section 1981 claims as properly-brought section 1983 claims, they would fail on the summary judgment standard. A claim brought against a governmental entity pursuant to 42 U.S.C. § 1983, also known as a *Monell* claim, requires proof of three elements: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)). While Gazani argues that HPD's practices "reflect an unlawful custom of discriminating or retaliating against certain officers," he does not point to any evidence in the summary judgment record to support such an assertion. (Dkt. 44 at p. 8). The Court need not search the record for evidence that Gazani has failed to cite. "As the Seventh Circuit has memorably put it, '[j]udges are not like pigs, hunting for truffles buried [in the record].'" *Murthy v. Missouri*, 603 U.S. 43, 67 n.7 (2024).

The Court finds that Gazani fails to create a genuine issue as to whether an official policy attributable to HPD's policymakers was the moving force behind a violation of Gazani's constitutional rights. Accordingly, Gazani's claims for discrimination and retaliation under either sections 1981 or 1983 must be dismissed.

**C.    Claims under Title VII**

The Court finds that it must grant the City's motion as to all of Gazani's Title VII claims. Gazani's discrimination and retaliation claims fail because no genuine issue exists as to HPD's legitimate non-discriminatory reasons for Gazani's transfer and suspension. Gazani's harassment claim similarly fails because no genuine issue exists as to whether HPD failed to take prompt remedial action.

*ii.    Discrimination*

The Court finds that no genuine issue exists as to Gazani's discrimination claim under Title VII. As Gazani has not proffered direct evidence of discrimination,[2] the Court must apply the modified *McDonnel Douglas* burden-shifting framework. *Daniel v. Bd. of Supervisors*, No. 21-30555, 2022 U.S. App. LEXIS 9568, at *14 (5th Cir. Apr. 8, 2022). Under the *McDonnell Douglas* approach, the plaintiff has the initial burden of making a *prima facie* showing of discrimination. *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941

---

[2] Gazani argues that Lt. Sulla's statement that "[t]his is not your country" and "[w]e run things differently here" is direct evidence of national origin discrimination. (Dkt. 44 at p. 9). However, "[d]irect evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Harry v. Dall. Hous. Auth.*, 662 F. App'x 263, 266 (5th Cir. 2016). "In the Title VII context, direct evidence includes any statement or document that shows on its face that an improper criterion served as a basis for the adverse employment action." *Id*. The Court finds that an inference is required to consider Lt. Sulla's statement as an improper basis for Gazani's being suspended and transferred, and it is therefore not direct evidence of discrimination.

(5th Cir. 2005); *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). For the purposes of this motion, the Court assumes without finding that Gazani is able to present a *prima facie* case of discrimination.

      a.     *Legitimate Non-Discriminatory Reason*

Where the plaintiff is successful in presenting a *prima facie* case of discrimination, the burden of production shifts to the employer to "rebut a presumption of discrimination by articulating a legitimate, nondiscriminatory reason for the adverse employment action." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007) (citing *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001)). "If defendant meets that burden, 'the presumption of discrimination created by the plaintiff's *prima facie* case disappears and the plaintiff must meet [their] ultimate burden of persuasion on the issue of intentional discrimination.'" *Lay v. Singing River Health Sys.*, 694 F. App'x 248, 253 (5th Cir. 2017) (quoting *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005)).

Assuming arguendo that Gazani is able to demonstrate a *prima facie* case of discrimination, the City bears the burden of production to demonstrate a legitimate non-discriminatory reason for HPD's suspension and transfer of Gazani. "The defendant may meet this burden by presenting evidence that 'if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action.'" *Nichols v. Loral Vought Systems Corp.*, 81 F.3d 38, 41 (5th Cir. 1996) (quoting *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 992 (5th Cir. 1996)). The defendant's burden is one of production, not proof, and involves no credibility assessments. *See, e.g., West v. Nabors*

*Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003). This "burden requires the production of admissible evidence in support of its nondiscriminatory reasons." *Hervey v. Miss. Dep't of Educ.*, 404 Fed. App'x. 865, 868 (5th Cir. 2010) (per curiam). "If the employer produces any evidence, which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action, then the employer has satisfied its burden of production." *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995) (quotation omitted).

The City has proffered sufficient evidence to carry its burden to demonstrate a legitimate nondiscriminatory reason for HPD's actions towards Gazani. Specifically, the City has produced admissible evidence that Gazani was investigated, and ultimately suffered suspension, because of a citizen's complaint regarding his conduct. (Dkt. 35 at p. 17). Further, the City has made clear that HPD transferred Gazani away from his alleged harassers pursuant to an internal anti-discrimination policy enforced to shield complainants. (*Id*. at p. 18). In these ways, the City has met its burden to demonstrate legitimate non-discriminatory reasons for HPD's suspension and transfer of Gazani.

### b.    *Evidence of Pretext*

The City has provided sufficient evidence to show it predicated its actions on a legitimate nondiscriminatory reason—now, Gazani can only avoid summary judgment by "adduc[ing] evidence that [the City's] proffered reason" for HPD's actions "was merely a pretext" for discrimination. *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 685 (5th Cir. 2001). "This burden now merges with the ultimate burden of persuading the court that [Gazani]

has been the victim of intentional discrimination. [Gazani] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S. Ct. 1089, 1095 (1981). The Court finds that Gazani fails to do either.

Gazani argues: "The City's inconsistent explanations and alleged disregard for exculpatory evidence support an inference that these measures were pretextual." (Dkt. 44 at p. 11). However, Gazani has once again failed to identify any evidence supporting his argument in the record. The Court finds that this conclusory argument is insufficient to create a genuine issue as to whether the HPD's legitimate non-discriminatory reason for suspending and transferring Gazani was pretextual. Accordingly, Gazani's discrimination claim under Title VII fails.

*ii.    Retaliation*

The Court finds no genuine issue exists as to Gazani's retaliation claim under Title VII. "Title VII's antiretaliation provision forbids employer actions that 'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000e—3(a)). "Where, as here, the plaintiff seeks to prove causation by circumstantial evidence, he carries the initial burden of establishing a prima facie case of retaliation," and the retaliation claim is analyzed under a *McDonnell*

*Douglas* burden-shifting framework. *Ackel v. Nat'l Communs., Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (cleaned up).

The Court finds that Gazani's retaliation claim fails under the *McDonnell Douglas* framework. Gazani claims that HPD retaliated against him in violation of Title VII by suspending and transferring him. (Dkt. 44 at p. 11). For the same reasons the Court espoused in its analysis of Gazani's discrimination claim, the Court finds that Gazani's retaliation claim fails. Gazani has failed to carry its burden to create a genuine issue as to whether HPD's legitimate non-retaliatory reasons for Gazani's suspension and transfer are pretext. Accordingly, the Court must dismiss Gazani's retaliation claim.

### iii.    Coworker Harassment

The Court finds that no genuine issue exists as to Gazani's claim for harassment under Title VII. To prevail under Title VII for harassment under these circumstances, Gazani must show that: "(1) the victim belongs to a protected group; (2) the victim was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) the victim's employer knew or should have known of the harassment and failed to take prompt remedial action." *E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393, 399 (5th Cir. 2007).

The Court finds that Gazani failed to create a genuine issue as to the last element. Gazani initiated his complaint of discrimination internally with HPD. (Dkt. 35 at p. 29). HPD began his transfer immediately thereafter on the next day—and it was effective a few

weeks later. *Id*. This transfer "removed Gazani from the reach of any of the alleged harassing individuals" while HPD investigated his claims. *Id*. HPD ultimately found no violations of HPD policy by any of the alleged harassers. *Id*. While Gazani argues that "HPD took insufficient steps to address or remediate this behavior," he again does not point to any evidence to support this contention. (Dkt. 44 at p. 11). The Court finds that no genuine issue exists as to whether HPD promptly addressed the alleged harassment. Accordingly, Gazani is unable to prevail on his claim for harassment under Title VII, even if he were to prove the other elements of such a claim.

## IV.    CONCLUSION

The Court finds that Gazani has failed to create a fact issue as to any of his claims against the City. Accordingly, the Court **GRANTS** the City's Motion for Summary Judgment (Dkt. 35) and **DISMISSES** this lawsuit **WITH PREJUDICE**.

Final judgment is to follow.

 SIGNED at Houston, Texas on August 29, 2025.

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE